IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Kenard Wheeler, Jr.

_____

_____

*(Write the full name of each plaintiff who is filing
this complaint. If the names of all the plaintiffs
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names.)*

-against-

Honorable Alex M. Azar II, Secretary

U.S. Department of Health & Human

Services

*(Write the full name of each defendant who is
being sued. If the names of all the defendants
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names.)*

**Complaint for Employment
Discrimination**

Case No. C-02-CU-A-3122

*(to be filled in by the Clerk's Office)*

Jury Trial:   ☐ Yes   ☐ No
*(check one)*

CIVIL DEPARTMENT
FILED
2019 OCT -2' A II: 37

I.    **The Parties to This Complaint**

A.    **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Kenard Wheeler, Jr. |
| Street Address | 251 Admiral Cochrane Dr., #2002 |
| City and County | Annapolis, Anne Arundel County |
| State and Zip Code | Maryland, 21401 |
| Telephone Number | 240-602-9863 |
| E-mail Address | kenardwheeler9@gmail.com |

B.    **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known).  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Honorable Alex M. Azar II, Secretary |
| Job or Title (if known) | U.S. Depart of Health & Human Services |
| Street Address | 330 C Street S.W., Suite 2500 |
| City and County | Washington, DC |
| State and Zip Code | District of Columbia 20201 |
| Telephone Number | |
| E-mail Address (if known) | |

2

Defendant No. 2

| | |
|---|---|
| Name | None |
| Job or Title (if known) | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address (if known) | |

Defendant No. 3

| | |
|---|---|
| Name | None |
| Job or Title (if known) | |
| Street Address | |
| City and County | |
| State and Zip Code | |
| Telephone Number | |
| E-mail Address (if known) | |

*(If there are more than three defendants, attach an additional page providing the same information for each additional defendant.)*

C.   **Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is:

| | |
|---|---|
| Name | Department of Health & Human Services |
| Street Address | 200 Independence Ave., S.W, Ste 529G47 |
| City and County | Washington, DC 20201 |
| State and Zip Code | District of Columbia |
| Telephone Number | |

3

## II.   Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Other federal law *(specify the federal law)*:

_____

☐ Relevant state law *(specify, if known)*:

_____

☐ Relevant city or county law *(specify, if known)*:

_____

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.  The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐  Failure to hire me.

☐  Termination of my employment.

☒  Failure to promote me.

☐  Failure to accommodate my disability.

☐  Unequal terms and conditions of my employment.

☒  Retaliation.

☒  Other acts *(specify)*: harassment

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.  It is my best recollection that the alleged discriminatory acts occurred on date(s)

**February 2017**

C.  I believe that defendant(s) *(check one)*:

☐  is/are still committing these acts against me.

☐  is/are not still committing these acts against me.

D.  Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☐  race _____

☐  color _____

☒  gender/sex _____

☐  religion _____

☐  national origin _____

☐  age.  My year of birth is _____.  *(Give your year of birth only if you are asserting a claim of age discrimination.)*

☐  disability or perceived disability *(specify disability)*

_____

5

E.   The facts of my case are as follows.  Attach additional pages if needed.

See attached   3 pages

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.   Exhaustion of Federal Administrative Remedies

A.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

February 2019

B.   The Equal Employment Opportunity Commission *(check one)*:

☐   has not issued a Notice of Right to Sue letter.

☐   issued a Notice of Right to Sue letter, which I received on *(date)* September 12, 2019

*(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.   Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐   60 days or more have elapsed.

☐   less than 60 days have elapsed.

## V.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

See attached    2 pages

7

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 10 · 2 , 2019.

Signature of Plaintiff _____

Printed Name of Plaintiff   Kenard Wheeler

*(If more than one plaintiff is named in the complaint, attach an additional certification and signature page for each additional plaintiff.)*

### B.   For Attorneys

Date of signing: _____, 20__.

Signature of Attorney _____

Printed Name of Attorney _____

Bar Number _____

Name of Law Firm _____

Address _____

Telephone Number _____

E-mail Address _____

TRUE COPY,
TEST: Scott A. Foyer, Clerk
By:_____Deputy

8



DEPARTMENT OF HEALTH & HUMAN SERVICES     Office of the Secretary

Assistant Secretary for Administration
Equal Employment Opportunity,
Diversity & Inclusion
Washington, DC. 20201

## U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES
## EQUAL EMPLOYMENT OPPORTUNITY COMPLAINT FINAL AGENCY DECISION

**Complainant:**          Kenard Wheeler, Jr.

**Respondent:**           Alex M. Azar II, Secretary
                          U.S. Department of Health & Human Services

**Operating Division:**   Office of the Secretary (OS)

**Agency File No.:**      HHS-OS-0014-2019

**Basis:**                Sex

**Issues:**               Disparate Treatment
                          Hostile Work Environment/Harassment

## DECISION

It is the final agency decision (FAD) of the Department of Health & Human Services (HHS, Agency, or Department) that Complainant was <u>not</u> discriminated against as stated. Accordingly, no relief, attorney's fees, or corrective action is ordered.

## ACCEPTED CLAIMS[1]

Whether Complainant was subjected to harassment (non-sexual) and discriminated against on the basis of sex (male) when the following occurred:

1. On December 7, 2018, Complainant was issued a Performance Deficiency Notice.

2. On December 7, 2018, Complainant was issued a memorandum indicating he would not be receiving his Career Ladder Promotion to the GS-12 level.

---

[1] Claims 1 and 2 are timely discrete acts, and will be analyzed under both disparate treatment and hostile work environment harassment theories. Claim 3 is analyzed solely under a hostile work environment harassment analysis.

3. Whether Complainant was subjected to harassment (non-sexual) when the following occurred:

   a. On September 5, 2018, Complainant was directed to take training courses that were not related to his Financial Management Analyst (GS-560-11) position; and

   b. On November 6, 2018, Management made derogatory comments toward Complainant in a meeting.

## PROCEDURAL HISTORY

On December 19, 2018, Complainant contacted an Agency Equal Employment Opportunity (EEO) Counselor regarding Complainant's timely allegations of discrimination. (Report of investigation (ROI), Exhibit (Ex.) B-1)  Efforts to resolve the complaint via traditional EEO counseling were unsuccessful, thus, by memorandum dated February 5, 2019, the Agency notified Complainant of the right to file a formal complaint of employment discrimination. (ROI, Ex. B-2)  On February 12, 2019, Complainant filed a formal complaint of discrimination.  (ROI, Ex. A-1)

On February 13, 2019, the Agency issued an acknowledgment letter to Complainant. (ROI, Ex. C-1)  On February 26, 2019, the Agency issued Complainant a letter of acceptance identifying discrimination claims accepted for investigation.  (ROI, Ex. C-2)  An investigation was conducted between March 9, 2019, and May 18, 2019, and the Agency issued the ROI to Complainant on July 12, 2019.  On July 18, 2019, Complainant elected a FAD on the record.  Therefore, in accordance with 29 C.F.R. § 1614.110(b), this FAD on the record is being issued.

## FACTUAL BACKGROUND

Complainant served as a Financial Management Analyst, GS-11, at the Assistant Secretary for Financial Resources (ASFR)/Office of the Secretary Budget (DOSB)/Office of the Secretary Budget Execution (OSBE), since December 2016. Complainant's first-level supervisor was Responsible Management Official (RMO)-2, Financial Manager, ASFR/DOSB/OSBE.  Complainant's second-level supervisor was RMO-1, Branch Chief, ASFR/DOSB/OSBE.

## APPLICABLE LAW

Title VII of the Civil Rights Act of 1964, as amended, §§ 701 et seq., 42 U.S.C. §§ 2000e et seq. ("Title VII") prohibits discrimination based on race, color, sex, religion, national origin, and reprisal/retaliation.  Discrimination based on age is prohibited by the Age Discrimination in Employment Act of 1967, as amended.  29 U.S.C. § 621.

## Disparate Treatment

The U.S. Supreme Court outlined a tripartite analysis under which disparate treatment complaints of discrimination brought under Title VII are examined.  *See, McDonnell Douglas Corporation v. Green,* 411 U.S. 792 (1973).

### Prima Facie Case

First, the burden of proof under disparate treatment analysis falls on Complainant to establish a *prima facie* case of discrimination by demonstrating that: (1) Complainant was a member of a protected class; (2) Complainant suffered an adverse employment action; and (3) a similarly situated individual outside of Complainant's protected class was treated more favorably.  Courts have stated that Complainant's burden of proof is not an onerous one and have applied it in a flexible manner.  *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252-253 (1981).

In order to be considered similarly situated, all relevant aspects of Complainant's work situation must be identical or virtually identical to those of the comparators.  This requires that Complainant and comparators engaged in the same conduct, reported to the same supervisor, performed the same job functions, and had equivalent disciplinary records.  *Hunter v. United States Postal Service,* EEOC Appeal No. 05960762 (October 1, 1998).  However, Complainant does not necessarily need to provide comparative information, showing that an employee outside of Complainant's protected group was treated differently from Complainant.  See, *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 311-12 (1996); *Enforcement Guidance on O'Connor v. Consolidated Coin Caterers Corp.,* EEOC Notice No. 915.002 (September 18, 1996).

In the absence of comparative data, Complainant may establish a *prima facie* case by setting forth sufficient evidence, which, if unrebutted, would create or support an inference of discrimination.  *See, e.g., McDonnell Douglas v. Green, supra,* at 802-03; *Teamsters v. U.S.,* 431 U.S. 324 (1977); *Furnco Construction Corporation v. Waters,* 438 U.S. 567 (1978); *see also Avila v. Department of Homeland Security,* EEOC Appeal No. 07A60023 (July 12, 2006) (While comparative data are not required, a complainant is required to provide some evidence that his protected class(es) caused the conduct at issue.).  The U.S. Supreme Court has held that even if Complainant failed to provide comparator evidence, federal EEO complaints can move forward with the articulation of management's legitimate, nondiscriminatory reason. *United States Postal Service Board of Governors v. Aikens, 460 U.S. 711 (1983)* (quoting *Burdine,* 450 U.S. at 252-253); *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577 (1978).

### Management's Legitimate, Nondiscriminatory Reasons

Second, once Complainant establishes a *prima facie* case, there is a presumption of discrimination that the employer may rebut by articulating a legitimate, non-discriminatory reason for the challenged action.  *Burdine,* 450 U.S. at 252-253.  The evidence presented by management need not establish management's actual

motivation, but it must be sufficient to raise a genuine issue of material fact as to whether management discriminated against Complainant. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).

Pretext

Third, to prevail, Complainant must prove, by a preponderance of evidence, that the Agency's explanation is a pretext for discrimination. *Reeves,* 530 U.S. at 143; *Hicks,* 509 U.S. at 519; *Pavelka v. Department of the Navy*, EEOC Request No. 05950351 (December 4, 1995). A reason cannot be proven to be pretextual unless it is shown that the reason was false and that discrimination was the real reason for the action taken. Mere assertions or speculations are insufficient to establish pretext. Thus, it is not enough simply to disbelieve the Agency's articulated reason. *See, Grier v. United States Postal Service*, EEOC Appeal No. 01986577 (March 7, 2000); *Thompson v. United States Chemical Safety & Hazard Investigation Board*, EEOC Appeal No. 01A21995 (September 24, 2003).

Complainant must show that the discriminatory reason for management's actions and management's explanation are not credible based on objective evidence. In addition, the fact-finder must believe Complainant's explanation of intentional discrimination. *Hicks,* 509 U.S. at 519. The burden of showing that management intentionally discriminated against Complainant remains at all times with Complainant. *Burdine,* 450 U.S. at 252-253; and *Williams v. Department of the Army*, EEOC Appeal No. 01842729 (July 9, 1986).

However, the agency has broad discretion to carry out personnel decisions and should not be second-guessed by the reviewing authority absent evidence of unlawful motivation. *Burdine,* 450 U.S. at 259; *Stiles v. Department of Transportation*, EEOC Request No. 05910577 (June 27, 1991); *Kath v. Environmental Protection Agency*, EEOC Appeal No. 01200535991 (January 5, 2007) (citing *Fischbach v. D.C. Department of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996)).

## Hostile Work Environment/Harassment (Non-Sexual)

In order to establish a *prima facie* case of hostile work environment harassment, Complainant must show that: (1) Complainant belonged to a statutorily protected class, (2) Complainant was subjected to harassment in the form of unwelcome verbal or physical conduct, (3) the harassment complained of was based on the statutorily protected class, and (4) the harassment affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment. *Gibson v. Department of Homeland Security*, EEOC Appeal No. 0720060079 (December 8, 2008) (citing *Humphrey v. United States Postal Service*, EEOC Appeal No. 01965238 (October 16, 1998)). *See, also*, 29 C.F.R. § 1604.11, n.1 ("The principles involved here [describing conduct that constitutes sexual harassment] continue to apply to *race, color,* religion, or national origin.").

According to the EEOC, the conditions of employment are altered "only if the harassment culminates in a tangible employment action or was sufficiently severe or pervasive to create a hostile work environment." *EEOC Enforcement Guidance: Vicarious Employer Liability for Unlawful Harassment by Supervisors* (June 18, 1999). In determining whether harassment has occurred, factors to consider are the frequency of the alleged discriminatory conduct, its severity, whether it was physically threatening or humiliating, and if it unreasonably interfered with an employee's work performance. *See e.g., Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23 (1993) (defining hostile work environment as when a "workplace is permeated with discriminatory intimidation, ridicule, and insult which is sufficiently severe or pervasive").

Thus, for harassment to be considered discriminatory, it must be severe or pervasive. "Conduct that is not severe and pervasive enough to create an objectively hostile or abusive environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Harris,* 510 U.S. at 28. The alleged incidents of harassment are evaluated objectively from the view of a reasonable person in the victim's circumstances. *See, Enforcement Guidance on Harris v. Forklift Systems Inc.,* EEOC Notice Number 915.002 (March 8, 1994). *See, also, Highlander v. K.F.C. National Management Co.,* 805 F.2d 804 (6th Cir. 1986). Further, if a complainant does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of employment, and there is no violation. *Id.* at 22-23

Actual psychological or emotional injury is not required, *id.,* but EEO laws do not impose a "general civility code." *Faragher v. City of Boca Raton,* 524 U.S. 775, 785 (1998). *See, also, Brown v. Department of the Navy,* EEOC No. 01A54273 (September 14, 2005) (employment discrimination statutes are "not meant to be a general civility code, ridding the workplace of all petty slights and annoyances."). Title VII does not serve "as a vehicle for vindicating the petty slights suffered by the hypersensitive." *Staton v. Department of the Navy,* EEOC Appeal No. 01903774 (February 11, 1991). "Harassment, as the term is used in Title VII cases, refers to more than being subjected to stress." *Lin v. United States Postal Service,* EEOC Appeal No. 01932880 (December 21, 1993).

Unless the conduct is very severe, a single incident or group of isolated incidents will not be regarded as discriminatory harassment. *See, e.g., Vega v. Social Security Administration*, EEOC Appeal No. 0120111424 (June 10, 2011). EEOC has repeatedly found that remarks or comments, unaccompanied by a concrete agency action, usually are not a direct and personal deprivation sufficient to render an individual aggrieved. *See e.g., Cobb v. Department of the Treasury,* EEOC Appeal No. 01960215 (March 13, 1997). Even in circumstances where EEOC has found alleged remarks sufficient to render an individual aggrieved, EEOC has based its holding on a description of the employee's work environment as a whole, and not just on the alleged comments. *Id.*

A claim of hostile work environment harassment may be rebutted by the production of evidence to show that: (1) the alleged conduct did not occur; (2) the conduct complained of was not unwelcome; (3) the alleged harassment was not sufficiently severe or pervasive to adversely affect the Complainant's employment, to unreasonably interfere with the Complainant's performance, or to create an abusive working environment; (4) immediate and appropriate corrective action was taken once management was put on notice; and/or (5) there is no basis for imputing liability. *Crane v. Postmaster General, EEOC Case No. 01924585 (April 22, 1993).*

The question of liability arises only after there is a determination that unlawful harassment occurred. For hostile work environment claims that do not result in a tangible employment action, the Agency may assert an affirmative defense by demonstrating that it exercised reasonable care to prevent and promptly correct any harassing behavior and that Complainant unreasonably failed to take advantage of any preventative or corrective opportunities provided by the Agency. *See, Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998); Faragher, 524 U.S. at 775.*

### ANALYSIS AND FINDINGS

**Disparate Treatment**

### Claim 1: Complainant was issued a Performance Deficiency Notice

By way of background, Complainant stated that on July 20, 2017, he met with the Senior Advisor (SA) to the Deputy Assistant Secretary for Budget (DASB) of OSBE, and discussed Complainant's future goals in the OSBE group. Complainant stated that one of his goals was to start working on his own financial accounts instead of shadowing Senior Budget Analysts and serving as a file clerk.[2] Complainant noted that in his past positions, he worked as a Financial Technician and a Financial Analyst, which included work similar to that of the Senior Budget Analysts and in July 2017, he asked RMO-1 and RMO-2 when he would be allowed to work as a Financial Management Analyst. Complainant explained that on August 15, 2017, he sent an email to RMO-1 and RMO-2, copying the DASB, informing them of his experience in order to work as a Financial Management Analyst and not the group's file clerk. (ROI, Ex. F-1)

He stated that RMO-1 and RMO-2 told him it usually took six months to a year before an account was given to a new hire, but in October 2017, RMO-1 and RMO-2 informed him that he would begin assisting Witness-1 with one of his accounts. During this time, Complainant stated he reviewed and corrected errors on current and past accounts, repaired billing issues and reduced the negative fund balance report numbers.

Complainant indicated that on December 7, 2018, RMO-1 and RMO-2 issued him a Performance Deficiency Notice (PDN) which included false allegations. He stated

---

[2] Complainant stated that after his onboarding process, he underwent training from January 2017, through February 2017, and then shadowed Senior Budget Analysts perform their work while serving as a file clerk from February 2017, through September 2017. (ROI, Ex. F-1, p. 323)

management intended to ultimately remove him from Federal service. Complainant explained he disagreed with the allegations because he never received a written notice before or on his performance review in September 2018. For support, Complainant noted that his Performance Management Appraisal Program (PMAP) stated "...*written narrative required if performance on any element is less than achieved expected results.*" Complainant believes his sex was a factor in the issuance of the PDN because his supervisors are female. (ROI, Ex. F-1, pp. 323-26)

### *Prima Facie* Case: Sex

Complainant has met the first element of his *prima facie* case of disparate treatment by virtue of his sex (male).

The second element of Complainant's *prima facie* case has been met as Complainant has demonstrated that he suffered an adverse employment action when he was issued the PDN.

Complainant did not meet the third element because Complainant has not identified a similarly situated employee, outside of Complainant's class, who was treated more favorably. The mere fact that Complainant's supervisors are female is not evidence of discrimination against him. In the absence of comparators, Complainant may bring forth other additional evidence of discrimination, but Complainant did not do so.

Based on the analysis above, Complainant failed to establish a *prima facie* case of disparate treatment based on sex.

Assuming, *arguendo,* that Complainant had established a *prima facie* case of sex discrimination, the burden shifts to management to articulate legitimate, nondiscriminatory reasons for its actions.

### Management's Legitimate, Nondiscriminatory Reasons

Management articulated legitimate, nondiscriminatory reasons for its actions.

RMO-1 (female) stated she has been a Branch Chief, GS-15, ASFR/DOSB/OSBE, for 10 years. She noted her first-line supervisor was RMO-3, DOSB Division Director, and she served as Complainant's second-line supervisor since Complainant was hired in 2016. RMO-1 stated that she was present during Complainant's mid-year review and subsequent discussions, and was aware of RMO-2's intent to issue the PDN to Complainant. RMO-1 stated she did not believe Complainant was issued the PDN because of an email he sent to management on August 15, 2017, but because Complainant was asked to assist another team member with her files and he failed to comply. She noted the PDN was not based on Complainant's sex. (ROI, Ex. F-3, pp. 474-79)

RMO-2 (female) stated she has been a Supervisory Financial Analyst, GS-14, ASFR/DOSB/OSBE, since January 2013. RMO-2 stated she has served as Complainant's first-line supervisor since Complainant was hired in 2016. She stated she issued Complainant the PDN to outline areas of performance that needed improvement and so he would receive an acceptable rating during the rating period. She explained Complainant had poor standards of work, made frequent mistakes then attempted to cover them up, failed to follow through on work assignments and was unable to follow instructions given. She stated Complainant could not cope with a reasonable volume of work to a satisfactory standard; had a negative attitude toward work; poor interpersonal skills; a lack of respect for leadership, customers, and colleagues; and excessive absenteeism and tardiness. RMO-2 stated the PDN was based solely on Complainant's performance and not on his sex or because of an email he sent to the DASB requesting to work as a Financial Management Analyst. (ROI, Ex. F-4, 487-89)

Witness-1 (male) stated he has been a Senior Budget Analyst, GS-14, ASFR/DOSB/OSBE, for five years. He noted his first-line supervisor was RMO-2 and his second-line supervisor was RMO-1. Witness-1 stated he and Complainant are coworkers. Witness-1 confirmed that Complainant was assigned to assist him on certain tasks, to which his performance "was sufficient." However, Witness-1 stated that Complainant had deficiencies regarding his interactions with ASFR Stakeholders. He stated that on several occasions (unspecified dates), he received complaints from customers stating they were left uncomfortable and frustrated after communicating with Complainant. Witness-1 stated he was not aware of Complainant's email to the DASB in August 2017, or the PDN, and has not seen any indication of discrimination based on Complainant's sex. Witness-1 stated that Complainant did not report any discrimination or harassment to him. (ROI, Ex. F-7, pp. 529-36)

**Pretext**

Complainant failed to demonstrate that the Agency's proffered reasons were pretext for discrimination based on his sex. Complainant merely argued that the performance action taken against him was unfair and did not accurately reflect his performance. He did not provide any evidence that he was treated less favorably than similarly-situated female workers with similar performance, nor did he present any other evidence that this action was related to his sex.

A review of the PDN, dated December 7, 2018, shows that the purpose was to advise Complainant "of some performance concerns that [they] must address in order for [Complainant] to receive [his] career ladder promotion to the next higher grade, GS-12." The PDN also stated that career ladder promotions "are neither automatic nor mandatory," but are made when an employee demonstrates they were fully successful at their current level (performance and qualifications), and when there is no preclusion due to budgetary constraints. (ROI, Ex. F-11, p. 555) The PDN then listed examples of Complainant's deficiencies (as listed by RMO-1 above), and outlined an improvement plan for Complainant to complete over the next three months, which consisted of

working more closely with RMO-1 and completing training on effective communication, conflict resolution, tact, and diplomacy.  The PDN informed Complainant that his promotion would be approved upon his successful improvement at the end of the period.  (ROI, Ex. F-11, pp. 555-556)

The EEOC has previously held that an Agency may exercise its authority to manage Complainant's work and assignments, since Title VII was not intended to diminish traditional management prerogatives.  *See, Steel-workers v. Weber*, 442 U.S. 193, 207 (1979).  This is a classic case of management exercising its legitimate prerogatives, and in the absence of evidence of discrimination, which Complainant has not provided, we find that Complainant has failed to prove discrimination based on sex in claim 1.

### Claim 2

Complainant stated that on December 11, 2018, he became eligible for a Career Ladder Promotion to the GS-12 level.  Complainant stated that although he did not request a promotion, RMO-1 and RMO-2 should have promoted him because he repaired billing issues and reduced the negative fund balance in reports.  He indicated that RMO-1 and RMO-2 were threatened by Complainant because he is a young, educated, intelligent and capable male, and they were middle-aged women.  (ROI, Ex. F-1, pp. 324-26)

### *Prima Facie* Case: Sex

Complainant has met the first element of his *prima facie* case of disparate treatment by virtue of his sex (male).

The second element of Complainant's *prima facie* case has been met because Complainant has demonstrated he suffered an adverse employment action when he was not promoted to a GS-12 on December 11, 2018.

Complainant did not meet the third element because Complainant has not identified a similarly situated employee, outside of Complainant's class, who was treated more favorably.  As stated above, the mere fact that Complainant's supervisors are female is not evidence of discrimination against him, and Complainant failed to bring both evidence which would raise an inference of discrimination.

Based on the analysis above, Complainant failed to establish a *prima facie* case of disparate treatment based on sex.

Assuming, *arguendo,* that Complainant had established a *prima facie* case of sex discrimination, the burden shifts to management to articulate legitimate, nondiscriminatory reasons for its actions.

### Management's Legitimate, Nondiscriminatory Reasons

Management articulated legitimate, nondiscriminatory reasons for its actions.

Case 1:20-cv-01287-CRC    Document 1-3    Filed 01/07/20    Page 18 of 35

RMO-1 stated that Complainant became eligible for a promotion to a GS-12 on December 9, 2018, but it was not approved because Complainant did not excel in his position, did not provide adequate customer service, his analysis was unimpressive, and he was not an engaging team member. She stated that the decision to deny the career ladder promotion was not based on Complainant's sex. (ROI, Ex. F-3, 477-79)

RMO-2 stated that because Complainant's performance was lacking in so many areas, she did not approve his career ladder promotion to a GS-12 at the time he became eligible. She stated her decision to deny his promotion was not based on Complainant's sex, but only his performance. RMO-2 stated she mentioned the promotion denial of during the mid-year performance review meeting. (ROI, p. 490)

RMO-2 added that as of April 16, 2019, Complainant had shown remarkable improvement in each of the critical elements of his performance review, and she approved his career ladder promotion to the GS-12 grade level. (ROI, Ex. F-4, 490-92)

**Pretext**

Complainant failed to demonstrate that the Agency's proffered reasons were pretext for discrimination based on his sex. In his rebuttal, Complainant did not offer any new evidence showing that management's reasons were false and pretextual.

Claim 2 is closely related to claim 1 in that they occurred simultaneously and involved the same issue – Complainant's performance deficiencies. We previously reviewed management's stated reasons for issuing the PDN, which in turn led to the denial of his promotion at that time. Additionally, RMO-2 stated she brought this to Complainant's attention during his mid-year performance review. However, the record supports that Complainant successfully completed the three-month improvement plan from the PDN.

On April 16, 2018, Complainant received a numerical rating of 3.0 for his PMAP for 2018. In the narrative section of the PMAP, RMO-1 wrote the following;

"[Complainant] has shown remarkable improvement in each of the five critical elements of his PMAP. He has become a valued member of the budget team and I encourage [Complainant] to continue moving forward demonstrating his commitment to continuing improvement and successfully contributing to the team."
(ROI, p. 505)

Subsequently, on April 28, 2019, a Standard Form (SF)-50 was issued promoting Complainant to the GS-12 level. (ROI, p. 541)

Complainant's disagreement with his performance assessment in December 2018, is insufficient in and of itself to prove he was subjected to discrimination. Ultimately, this is an attempt by Complainant to second-guess management's legitimate decisions regarding his work performance. Complainant did not refute management's description

of his performance deficiencies, rather, he expressed his frustration with carrying out certain functions. Therefore, Complainant did not prove unlawful discrimination based on sex in claim 2.

## Hostile Work Environment Harassment (Non-sexual)

### Is Complainant a Member of a Protected Class?

#### Claims 1, 2, and 3

As discussed above, Complainant has met element one of a *prima facie* case of hostile work environment harassment by virtue of his sex (male).

Regarding elements two and three, in order to support his claim, Complainant must demonstrate that the harassment complained of involved unwelcome conduct and was related to his sex. *Dylan v. United States Postal Service*, EEOC Appeal No. 05A40135 (January 12, 2004). As addressed above, Complainant failed to establish a *prima facie* case of discrimination based on his sex. Management provided legitimate, nondiscriminatory reasons for its actions and Complainant failed to demonstrate that the Agency's proffered reasons were a pretext for discrimination. Complainant did not produce sufficient evidence to refute the Agency's reasons for its actions and therefore did not prove unlawful discrimination.

The disparate treatment analysis articulated by the U.S. Supreme Court in *McDonnell Douglas, supra,* is useful in determining whether the complained of actions were taken because of or based on Complainant's statutorily protected classes, as required for the second and third elements in a hostile work environment harassment claim. *See, e.g., Preisler v. United States Postal Service,* EEOC Appeal No. 0120082960 (September 2, 2011); *Oakley v. United States Postal Service,* EEOC Appeal No. 01982923 (September 21, 2000) (holding that a *prima facie* case of harassment is precluded by a finding that the agency's action was not motivated by discriminatory *animus* towards Complainant's protected bases).

The Commission has repeatedly held, in cases where Complainant's allegations support both harassment and disparate treatment claims, that "[a] *prima facie* case of hostile work environment is precluded based on [a] finding that [the] complainant failed to establish that any of the actions taken by the agency were motivated by discriminatory or retaliatory *animus*." *Temple v. Small Business Admin.*, EEOC Appeal No. 0120070563 (April 9, 2009) (*citing Oakley v. United States Postal Serv.,* EEOC Appeal No. 01982923 (September 21, 2000)); *See, also, Steward v. Dep't of Labor,* EEOC Appeal No. 0120093844 (June 24, 2011).

Similarly, Complainant cites his allegations in the present case in support of both his disparate treatment and harassment claims. As analyzed previously, Complainant failed to satisfy his burden of showing, by a preponderance of the evidence, that the allegedly discriminatory treatment was motivated by unlawful discrimination. As such, a finding of hostile work environment also necessarily fails since the same events

analyzed as disparate treatment also form the basis of Complainant's harassment claim for claims 1 and 2. We will proceed with the harassment analysis for claims 3(a)-(b) below.

## Did Unwelcome Contact Occur that was based on Complainant's Protected Classes?

Regarding elements two and three of a *prima facie* case of hostile work environment harassment, Complainant must demonstrate that the harassment complained of involved unwelcome conduct and was related to his sex.

### Claim 3(a)

Complainant stated that on September 5, 2018, he received an email from RMO-2 requesting that he prepare training forms for classes (Interpersonal Communications and Developing Effective Relationships) that she recommended he attend with no explanation. Complainant stated he asked RMO-2 why she wanted him to attend the classes, and she replied, "We will discuss in detail on 9/10." He noted that on September 6, 2018, he visited RMO-3 to discuss the conflict between the year-end close-out and the recommended training, to which RMO-3 replied, "I think you should take advantage of the training. You don't know what you might learn or who you might meet during the classes that will help you in your career."

Complainant stated he told RMO-3 that RMOs 1 and 2 were verbally abusing him because of his sex and that he was stressed and worried about his livelihood due to working in a hostile environment. However, Complainant stated he did not think RMO-3 ever spoke to RMO-1 or RMO-2 about his allegations because the harassment continued. (ROI, Ex. F-1, pp. 326-28)

### Management's Reasons

RMO-1 stated Complainant was rude to customers, arrogant, and talked down to people, including fellow team members. She indicated that customers complained Complainant had an attitude, flung work documents at them, and would walk away during conversations. She explained Complainant often used terminology like "you guys" when speaking in formal settings and raised his voice and made scenes in the workplace. She noted Complainant was asked to take the classes to improve his communication skills and to be more effective because a "*bona fide*" need existed, not because of his sex. (ROI, Ex. F-3, pp. 480-81)

RMO-2 stated that following multiple complaints by Complainant's customers and colleagues that he was rude, she requested he take training courses to enhance his communication skills. She stated Complainant's sex was not a factor and she requested he attend the training classes for developmental purposes only. (ROI, Ex. F-4, pp.492-93)

RMO-3 (male) stated he has been a Director, ASFR/DOSB/OSBE, since June 2018, and has served as Complainant's second-line supervisor since then. He stated that after Complainant's meeting with RMOs 1 and 2, Complainant informed him that he did not want to take the training classes without elaborating further. RMO-3 stated he told Complainant that if his manager requested the training, then Complainant should comply. (ROI, Ex. F-5, pp. 513-14)

In his rebuttal, Complainant stated he was never informed that he was "rude to customers, arrogant and talked down to people including fellow team members," as RMO-1 stated. Complainant recalled one instance where he exchanged words with an Information Technology Technician, and stated the particular incident was not listed in the PDN as support that he was not informed of communication complaints. However, we note that the PDN captured these situations when some of his deficiencies were labeled as "poor interpersonal skills" and "lack of respect for leadership, customers, and colleagues." (ROI, Ex. F-2, pp. 445-46)

The record supports that the training was recommended in response to the deficiencies identified in the PDN and was related to Complainant's conduct and overall performance, as opposed to his sex. Complainant has not presented any evidence to show that management's reasons were pretextual and based on his sex. Here, management was within their purview to recommend training to address a deficiency that they have identified based on complaints from customers and coworkers.

Therefore, Complainant not met the third element in claim 3(a).

### Claim 3(b)

Complainant stated that on November 6, 2018, RMO-1 and RMO-2 met with him behind closed doors and in angry voices stated, "We are not going to send you an email with an explanation. That's not how we roll. I don't know who you think you are. We told you to sign the training forms." He stated he then excused himself from the office and went straight to RMO-3's office to inform him of the situation and RMO-3 stated, "As I told you before, just take the class, you don't know what you might learn or who you might meet during the class that will help you in your career."

Complainant stated he scheduled a meeting with DASB to discuss the harassment, but decided to cancel the meeting to wait for something in writing from management regarding their request for him to attend the classes. Complainant stated RMO-1 and RMO-2 began running down the hallway to his desk, staring at him in an intimidating way, and then walking away. He noted that his supervisors did not treat any of his co-workers in this manner and that they did this to harass him further because of his sex. (ROI, Ex. F-1, pp. 328-30)

### Management's Reasons

RMO-1 stated that she met with RMO-2 and Complainant to discuss the training request, and when the conversation between RMO-2 and Complainant "became a little

heated," RMO-1 intervened and requested that everyone remain respectful.  She denied telling Complainant, "We are not going to send you an email with an explanation. That's not how we roll.  I don't know who you think you are.  We told you to sign the training forms." (ROI, Ex. F-3, pp. 481-482)

RMO-1 explained that Complainant repeatedly commented that management did not provide written justification for why he was asked to take the training, so she communicated that the training was for his benefit to introduce new communication techniques and enhance his communication skills.  She noted that during the conversation, Complainant walked out of her office and into RMO-3's office and closed the door.  (ROI, Ex. F-3)

RMO-1 stated Complainant had an issue with authority, complained a lot, thought he was always right, and often pointed out the mistakes of others.  She stated Complainant did not foster a good team attitude.  She stated this was the reason she believed the training was necessary.  (ROI, Ex. F-3, pp. 481-82)

RMO-2 stated that on September 5, 2018, she sent an email to Complainant requesting he prepare a training request and route it for approval, but as of November 26, 2018, he had not complied.  She explained that she sent him five follow-up emails on the following dates: September 5, 6, 12, October 31, and November 6, 2018, and it was discussed again during their meeting with RMO-1.  RMO-2 denied yelling at Complainant or making the statements he alleged.  She noted that during the meeting, she did not make any derogatory remarks to Complainant; rather, Complainant called her a liar and walked out of the meeting.  (ROI, Ex. F-4, pp. 493-94)

**Pretext**

In his rebuttal, Complainant denied calling RMO-2 a liar, but did not offer any evidence disproving management's reasons for sending him to training.  (ROI, Ex. F-2, p. 446) Therefore, Complainant failed to show that management's conduct was pretext for discrimination based on his sex.

Further, the record includes no evidence that this incident occurred as Complainant stated.  RMO-2 and RMO-1 denied that the statement Complainant alleged was made in this meeting.  Moreover, even if such a statement had been made, it was not related to Complainant's sex and would still be insufficient evidence of discrimination.  Thus, Complainant did not meet the third element in claim 3(b).

## Was the Unwelcome Conduct Severe or Pervasive?

Regarding element four of a *prima facie* case of hostile work environment harassment, Complainant must demonstrate that the harassment complained of was severe or pervasive.

All Complainant's claims are related to management's attempts to improve his poor work performance. There was no evidence that Complainant was singled out for any reason other than his work performance. No witness or other testimony corroborates Complainant's version of events or that he was subjected to a hostile work environment. In fact, when his work performance improved within the three-month period set by management, Complainant was promoted.

Taken as a whole, the incidents offered by Complainant did not rise to the level of severe or pervasive so as to alter the conditions of Complainant's employment and do not support a claim of actionable hostile work environment harassment. Further, the record supports the conclusion that based on an objective analysis, Complainant was not subjected to unreasonable interference with his work. Accordingly, Complainant has failed to establish the second, third, and fourth elements of a *prima facie* case of hostile work environment harassment.

In support of his claims of harassment, Complainant offered little more than a general belief that he was subjected to a hostile work environment. Complainant's subjective belief is insufficient as a matter of law to establish that the Agency's defenses and explanations for its decisions were a pretext for discrimination. Courts and the EEOC have consistently held that a trier of fact cannot find discrimination merely because an employee or adjudicator would have preferred that the employer conduct business differently. *See, Mosby v. General Services Administration*, EEOC Appeal No. 01970179 (October 15, 1999), *citing Bruno v. City of Crown Point, Indiana*, 950 F.2d, 355, 364 (7th Cir. 1991); *Waters*, 438 U.S. at 580.

Overall, Complainant's allegations of harassment are an attempt to strip the Agency of its prerogative to manage. Most of Complainant's alleged examples of harassment are simply Complainant's disagreement with management's fundamental duty to manage work and employees. It is not the job of the trier of fact to second-guess an employer's business decision and the fairness of those decisions, as long as the business is conducted in a nondiscriminatory manner. *See, Sanchez v. Phillip Morris, Inc.*, 992 F.2d 244 (10th Cir. 1993), *Burdine, 524 U.S. at 252-253*.

## CONCLUSION

Based upon a review of the entire record, we find that Complainant failed to his burden of persuasion to show, by a preponderance of the evidence, that he was subjected to *disparate treatment and/or harassment* based on his sex. Management articulated legitimate, nondiscriminatory reasons for its actions. Complainant did not provide, nor does the record reveal, persuasive material evidence that shows that the allegations raised by Complainant were motivated by discriminatory *animus* and there is insufficient evidence to demonstrate pretext. As such, the Agency is not liable for the discriminatory treatment alleged by Complainant.

Wheeler, Jr., Kenard-- Agency File No.:  HHS-OS-0014-2019

### NOTICE OF APPEAL RIGHTS (EEOC)

If Complainant is dissatisfied with this final agency decision, Complainant may file an appeal with the Equal Employment Opportunity Commission (EEOC).  An appeal may be filed by completing the enclosed EEOC Notice of Appeal/Petition (EEOC Form 573) and including a copy of this final agency decision.  An appeal to the EEOC must be postmarked or, absent a postmark, received by the EEOC, within 30 calendar days from the day Complainant receives the final agency decision.  If Complainant is represented by an attorney, the 30-day period for filing a notice of appeal begins to run on the day after the attorney receives the final agency decision.  An appeal shall be deemed filed on the day it is postmarked, or in the absence of a postmark, on the date it is received by EEOC.  If an appeal is not filed within the time limits indicated above, the appeal may be deemed untimely and may be dismissed by the EEOC.

Additionally, as required by 29 C.F.R. § 1614.403(a), an appeal should include a separate statement indicating what is being appealed.  Any statement or briefs filed in support of an appeal must be submitted to the EEOC within 30 calendar days from the date the appeal is filed.  Appeals to the EEOC and supporting documents should be forwarded to:

> Mail
> U.S. Equal Employment Opportunity Commission
> Office of Federal Operations (OFO)
> Appellate Review Programs
> P.O. Box 77960
> Washington, D.C. 20013

> or

> Hand-Delivered
> U.S. Equal Employment Opportunity Commission
> Office of Federal Operations (OFO)
> Appellate Review Programs
> 131 M Street, NE
> Washington, DC 20507

> or

> Facsimile, if 10 pages or fewer
> (202) 663-7022

A copy of any appeal, with supporting documents, must also be sent to the Department of Health & Human Services (HHS)'s Equal Employment Opportunity (EEO) Compliance and Operations Division:

Mail or Hand-Delivered
U.S. Department of Health & Human Services
Equal Employment Opportunity, Diversity & Inclusion
Mary E. Switzer Building
330 C Street, S.W., Suite 2500
Washington, DC 20201

or

Facsimile
(202) 619-0823

Complainant must certify the date and method by which service was made on the HHS
EEO Compliance and Operations Division regarding any appeal filed with the EEOC.

Within thirty (30) calendar days of receipt of the notice of appeal, HHS must submit the
complaint file to the Office of Federal Operations (OFO).  HHS has thirty (30) calendar
days from receipt of the statement or brief in support of the appeal, or sixty (60)
calendar days if no statement or brief has been filed, to submit a brief in opposition to
the appeal to the OFO, and simultaneously serve a copy of the opposition brief upon
Complainant.

In addition, with respect to claims filed under Title VII of the Civil Rights Act of 1964, as
amended, the Age Discrimination in Employment Act of 1967, as amended, and/or the
Rehabilitation Act of 1973, as amended, a civil action may be filed in the appropriate
federal district court in any of the following situations:

A.     Within 90 calendar days of receipt of HHS's final agency decision on an
       individual or class complaint if no appeal has been filed with the EEOC;

B.     Within 90 calendar days of receipt of the EEOC's decision on an appeal;

C.     After 180 calendar days from the date of filing an individual or class
       complaint if an appeal has not been filed with the EEOC and a final
       agency decision has not been issued by HHS;

D.     After 180 calendar days from the date of filing an appeal with the EEOC if
       a decision has not been issued by the EEOC.

For claims filed under the Equal Pay Act, Complainant may file a civil action within two
(2) years or, if the violation is willful, within three (3) years of the date of an alleged
violation, regardless of whether Complainant pursued any administrative complaint
processing.

If Complainant files a civil action under Title VII of the Civil Rights Act of 1964, as
amended, or the Rehabilitation Act of 1973, as amended, and if Complainant does not

have or is unable to obtain the services of a lawyer, Complainant may request that the court appoint a lawyer to represent Complainant. In such circumstances as it may deem just, the court may appoint a lawyer and may authorize commencement of the action without payment of fees or costs or posting of security. Any such request must be made within the above-referenced 90-day time limit for filing suit and in such form and manner as the court may require.

The granting or denial of the request is within the sole discretion of the court. Filing a request for an attorney does not extend Complainant's time in which to file a civil action. Both the request for a court-appointed representative and the civil action must be filed within ninety (90) calendar days of the date Complainant receives the final decision from HHS or from EEOC. Complainant should be aware that attorney's fees are not allowable at the administrative level under the Age Discrimination in Employment Act (29 U.S.C. § 633(a)) or the Equal Pay Act (29 U.S.C. § 206(d)).

Finally, if Complainant files a civil action, Complainant must name the appropriate department or agency head as the defendant. Failure to name the department or agency head may result in loss of any judicial redress to which Complainant may be entitled. The head of the U.S. Department of Health & Human Services is the Honorable Alex M. Azar II, Secretary.

FOR THE DEPARTMENT:

Cynthia Richardson-Crooks, J.D., Director          9-9-19
                                                   Date

Enclosure: EEOC Form 573

Wheeler, Jr., Kenard-- Agency File No.:  HHS-OS-0014-2019

## WITNESS KEY

| | |
|---|---|
| RMO-1 | Adrienne Little, Branch Chief |
| RMO-2 | Natalie Gravette, Supervisory Financial Analyst |
| RMO-3 | Mark Brown, Director ASFR/DOSB/OSBE |
| SA | Garey Rice, Senior Advisor to DASB |
| Witness-1 | Charles McPhatter, Senior Budget Analyst |
| DASB | Norris Cochran, Deputy Assistant Secretary of Budget |

Wheeler, Jr., Kenard-- Agency File No.:  HHS-OS-0014-2019

## CERTIFICATE OF SERVICE

For timeliness purposes, it shall be presumed that the below-named individuals received the foregoing final agency decision within five (5) calendar days after the date it was sent by United States Postal Service (USPS) First Class Mail or immediately upon electronic mail (email) delivery.

I certify that on September___*10*___, 2019, the foregoing final agency decision was sent to the following:

### BY USPS FIRST CLASS MAIL:

Mr. Kenard Wheeler
251 Admiral Cochrane Drive, Apt. 2002
Annapolis MD 21401

### BY EMAIL:

Robert B. Brady, Director
EEO Services Division
Equal Employment Opportunity, Diversity & Inclusion
Department of Health and Human Services
Robert.Brady@hhs.gov

Erica Johnson
Administrative Assistant

August, 2015                                                    Appendix P  EEO-MD-110

## NOTICE OF APPEAL/PETITION – COMPLAINANT
### TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### OFFICE OF FEDERAL OPERATIONS
P.O. Box 77960
Washington, DC 20013

**Complainant Information: (Please Print or Type)**

| | |
|---|---|
| Complainant's name (Last, First, M.I.): | |
| Home/mailing address: | |
| City, State, ZIP Code: | |
| Daytime Telephone # (with area code) | |
| E-mail address (if any): | |

**Attorney/Representative Information (if any):**

| | |
|---|---|
| Attorney name: | |
| Non-Attorney Representative name: | |
| Address: | |
| City, State, ZIP Code: | |
| Telephone number (if applicable): | |
| E-mail address (if any): | |

**General Information:**

| | |
|---|---|
| Name of the agency being charged with discrimination: | |
| Identify the Agency's complaint number: | |
| Location of the duty station or local facility in which the complaint arose: | |
| Has a final action been taken by the agency, an Arbitrator, FLRA, or MSPB on this complaint? | □ Yes   Date Received _____ (Remember to attach a copy) <br> □ No <br> □ This appeal alleges a breach of a settlement agreement |
| Has a complaint been filed on this same matter with the Commission, another agency, or through any other administrative or collective bargaining procedures? | □ No <br> □ Yes   (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate) |
| Has a civil action (lawsuit) been filed in connection with this complaint? | □ No <br> □ Yes   (Attach a copy of the civil action filed) |

**NOTICE**: Please **attach a copy of the final decision or order** from which you are appealing. If a hearing was requested, please attach a copy of the agency's final order and a copy of the Commission Administrative Judge's decision. Any comments or brief in support of this appeal MUST be filed with the Commission and with the agency **within 30 days** of the date this appeal is filed. The date the appeal is filed is the date on which it is postmarked, hand delivered, submitted, or faxed to the Commission at the address above.

Please specify any reasonable accommodations you will require to participate in the appeal process:

Management Directive
App. P-1

Appendix P EEO-MD-110                                              August, 2015

| Signature of complainant or complainant's representative: | |
| Date: | |
| Method of Service on Agency: | |
| Date of Service: | |

PRIVACY ACT STATEMENT ON REVERSE SIDE.
EEOC Form 573 REV 2/09
PRIVACY ACT STATEMENT

(This form is covered by the Privacy Act of 1974. Public Law 93-597. Authority for requesting the personal data and the use thereof are given below)

1. **FORM NUMBER/TITLE/DATE:** EEOC Form 573, Notice of Appeal/Petition, February 2009

2. **AUTHORITY:** 42 U.S.C. § 2000e-16

3. **PRINCIPAL PURPOSE:** The purpose of this questionnaire is to solicit information to enable the Commission to properly and effectively adjudicate appeals filed by federal employees, former federal employees, and applicants for federal employment.

4. **ROUTINE USES:** Information provided on this form may be disclosed to: (a) appropriate federal, state, or local agencies when relevant to civil, criminal, or regulatory investigations or proceedings; (b) a Congressional office in response to an inquiry from that office at your request; and (c) a bar association or disciplinary board investigating complaints against attorneys representing parties before the Commission. Decisions of the Commission are final administrative decisions, and, as such, are available to the public under the provisions of the Freedom of Information Act. Some information may also be used in depersonalized form as a database for statistical purposes.

5. **WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION:** Since your appeal is a voluntary action, you are not required to provide any personal information in connection with it. However, failure to supply the Commission with the requested information could hinder timely processing of your case, or even result in the rejection or dismissal of your appeal.

You may send your appeal to:

**The Equal Employment Opportunity Commission**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

**Fax it to (202) 663-7022 or submit it through the Commission's electronic submission portal.**

Management Directive
App. P-2

**United States District Court**

**For the District of Maryland**

Kenard Wheeler, Jr.
251 Admiral Cochrane Dr. #2002
Annapolis, MD 21401

Plaintiff (s),

vs.

Honorable Alex M. Azar, II, Secretary
U.S. Department of Health & Human Services
Office of Equal Employment Opportunity
Diversity & Inclusion
Department of Health and Human Services
330 C Street S.W., Suite 2500
Washington, DC 20201

Defendant(s).

## Statement of Relief

At this time, I ask the court to order Honorable Alex M. Azar II, Secretary with the U.S.

Department of Health & Human Services to compensate me "the Plaintiff" for my suffering and

pain working in the hostile environment under the following conditions:

(1)    humiliating me by hiring me as a Financial Management Analyst but assigning

File Clerk's work to me from other staff members who are equal to me;

(2)    harassing me for speaking to a high authority person "Mr. Rice", when Mr. Rice

initiated the meeting;

(3)    harassing me for during my job by fixing errors for client's to be satisfied.

Since my hire date, and through the duration of the Agency's investigation up until now

there has been no complaints on my actual work performance.  I have been stressed and worried

about my livelihood because I "the Plaintiff" spoke with management to receive work within the scope of a Financial Management Analyst.

On December 10, 2018 in my hundred and sixteen (116) page complaint I "the Plaintiff" asked to be transferred in order for the harassment to cease (transferred was denied). In June 2019, I "the Plaintiff" applied for a job at N.I.H within the U.S. Department of Health & Human Services through USA.gov. Hours after applying Ms. Little forwarded me "the Plaintiff "an email basically stating that if I "the Plaintiff" apply to the position at N.I.H. I would be eligible to a promotional potential to a GS-13.

August 2019 the Agency also, sent me an email stating I was referred and selected for a position from a certification list for a position under Mark Brown, Director ASFR/DOSB/OSBE (even though the announcement that I originally applied for did not specify terms that an applicant's name can be referred for other jobs within the U.S. Department of Health & Human Services). The Agency has stopped me from possible job offers in order to keep me employed under a department overseen by Mark Brown, Director ASFR/DOSB/OSBE to continue harassment or to terminate my position at the U.S. Department of Health & Human Services.

I have been working for the federal government since April 2010 and I have never experienced anything like what I have gone through since being employed in the OSBE department. I would like for this court to order the Honorable Alex M. Azar, II Secretary head of U.S. Department of Health & Human Services to remove the complaint from my employee's file; grant me "the Plaintiff" to be transferred to an agency of my choice with the Department of Health & Human Services; pay me three hundred thousand dollars ($300,000) for the humiliation, stress, harassment and retaliation that I had to endure since being employed.

*Kushell*

10·2·19

**United States District Court**

**For the District of Maryland**

Kenard Wheeler, Jr.
251 Admiral Cochrane Dr. #2002
Annapolis, MD 21401

Plaintiff (s),

vs.

Honorable Alex M. Azar, II, Secretary
U.S. Department of Health & Human Services
Office of Equal Employment Opportunity
Diversity & Inclusion
Department of Health and Human Services
330 C Street S.W., Suite 2500
Washington, DC 20201

Defendant(s).

## Statement of Claim

On September 12, 2019, I received a certified package from Honorable Alex M. Azar II,

Secretary head of the U.S. Department of Health & Human Services who oversees the operating

division of the Office of the Secretary (OS) regarding the Agency's final decision based on my

December 19, 2018 complaint filed with the Agency's Equal Employment Opportunity (EEO)

Counselor referencing allegations of discrimination (formal complaint was filed February 12,

2019) (supporting documents referencing evidence were provided to the Agency as well) .

Below is a brief description of discriminatory conduct that I "the Plaintiff" had to

encounter by managers employed under the Office of the Secretary lead by the Honorable Alex

M. Azar II, Secretary.  The managers have caused me "the Plaintiff" harm by harassment and

violated my rights as an employee under the National Treasury Employees Union by directing

me to seek assistance through the wrong point of contact in the Labor & Employee Relations Department in order to Retaliate against me "the Plaintiff".

### Section I –Harassment (Non-Sexual); Failure to Promote

Adrienne Little, Branch Chief for the OSBE Department and Natalie Gravette, Supervisory Financial Analyst for the OSBE department hired me "the Plaintiff" in December 2016 as a Financial Management Analyst to work in the OSBE Department.  After my onboarding process Ms. Little and Ms. Gravette utilized me from February 2017 through September 2017 as a file clerk to assist other Financial Management Analyst with their past year files.  In July 2017, Garey Rice, Senior Advisor to DASB requested to speak with all staff regarding our goals with OSBE in which I informed him that I was ready to manage an account. In August 2017, I sent an email to Ms. Little, Ms. Gravette cc'ing Mr. Rice regarding my experience and ability to work as a Financial Management Analyst in which I was hired for and not the Departments file clerk.  Shortly after, I started being verbally harassed by Ms. Little and Ms. Gravette.  In October 2017, Ms. Little and Ms. Gravette informed me that I will be assisting Charles McPhatter, a Senior Budget Analyst on one of his accounts.  As I worked on a part of the account that Ms. Little and Ms. Gravette assigned to me, I started receiving emails and calls from clients questioning issues regarding the account (the issues occurred before my time at OSBE). As I proceeded to fix errors and informed Ms. Little and Ms. Gravette the verbal harassment continued making my days at work a hostile environment.  In December 2017, Ms. Little and Ms. Gravette promoted me to a GS-11.

September 2018, my managers sent an email recommending training classes selected by them in which the registration was delay as I awaited on an explanation.  Also, in September 2018 my PMAP mid-review verbal meeting was held and no summary was written.  During the

2

meeting behind a closed door held by two managers I was bullied, humiliated and stressed. In November 2018, I was invited to attend a verbal follow up meeting that turned out to be a verbal harassment in which management made derogatory comments to me "the Plaintiff". I felt threaten and thought it would be best to exit the meeting and report the situation to Mark Brown, Director of ASFR/DOSB/OSBE right away. I "the Plaintiff" then scheduled a meeting with Norris Cochran, Deputy Assistant Secretary of Budget's secretary to discuss the meeting I "the Plaintiff" had with Ms. Little and Ms. Gravette. When I "the Plaintiff" returned to my desk Ms. Little and Ms. Gravette continued the harassment by a stare down intimidation. In December 2018, I "the Plaintiff" had a meeting with Ms. Gravette, who then provided me "the Plaintiff" with a Reprimand Letter; Performance Deficiency Notice; and Career Ladder Promotion.

### Section II – Retaliation Against Plaintiff

(1)   I "the Plaintiff" sent an email August 2017 to managers cc'ing Mr. Rice that I was working as a file clerk and not a Financial Management Analyst.

(2)   I "the Plaintiff" asked for an explanation as to why the selected training classes were chosen.

Kachule
10. 2· 14

3