UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KENARD WHEELER, JR.,** <br><br> Plaintiff, <br><br> v. <br><br> **XAVIER BECERRA**, <br><br> Defendant. | Case No. 20-cv-01287 (CRC) |

## MEMORANDUM OPINION

Plaintiff Kenard Wheeler, Jr., proceeding *pro se*, works as a Financial Management Analyst at the U.S. Department of Health and Human Services ("HHS"). Wheeler brought this suit against the Secretary of HHS[1] alleging failure to promote, retaliation, and harassment based on his gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. HHS moved to dismiss Wheeler's retaliation claim for failure to exhaust his administrative remedies prior to bringing suit. The Court granted that motion. See Op. & Order, Aug. 2, 2021, ECF No. 19. Discovery now complete, HHS moves for summary judgment on the remaining claims. The Court will grant the present motion as well.

**I.   Background**

In 2016, Wheeler began working as a Financial Management Analyst in HHS's Office of Secretary Budget Execution ("OSBE"), which manages budgets for various HHS components.

---

[1] The original defendant in the Complaint was Alex M. Azar, II, who was then serving as HHS Secretary. Xavier Becerra, the current Secretary, is automatically substituted for former Secretary Azar pursuant to Federal Rule of Civil Procedure 25(d). The Court will refer to the defendant as "HHS."

Def.'s SMF ¶ 1.[2]  At all relevant times, Supervisory Financial Analyst Natalie Gravette and Branch Chief Adrienne Little were Wheeler's direct and second-line supervisors, respectively. Id.  They were also responsible for hiring him.  Id. ¶ 3.  During the relevant period, Wheeler was one of two men in OSBE and the only one at his grade level.  Id. ¶ 4.  Wheeler started at a GS-09 level and was promoted to GS-11 in December 2017.  Def. Mot. Summ. J., Ex. 1 at 14:16–15:9 (Pl.'s Dep.).

    A.  Recommendation for Training Courses

On September 5, 2018, Gravette instructed Wheeler in an email to register for a course on "Interpersonal Communications."  Def. Mot. Summ. J., Ex. 2 at 23–24 (training recommendation emails).  Little was copied on the email.  Id.  Wheeler responded by asking why he should take the course, noting that September was a busy month for him.  Id. at 40.  Gravette replied that she would provide more detail during Wheeler's performance review the following week and that he should register for the training immediately.  Id.  Wheeler sought a second opinion of the recommendation from Mark Brown, Little's supervisor.  Id. at 26–27 (emails between Wheeler and Brown); Def.'s SMF ¶ 7.  While Brown expressed sympathy with Wheeler's scheduling

---

    [2]  The Court draws these facts from HHS's Statements of Undisputed Material Facts, ("Def.'s SMF"), ECF No. 28-2, as well as evidentiary exhibits filed by the parties.  The Court notes that Wheeler failed to comply with Local Rule 7(h)(1), which requires that an opposition to a motion for summary judgment include "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement."  See LCvR 7(h)(1); see also Cauthen v. District of Columbia, 459 F. Supp. 3d 134, 137 n.1 (D.D.C. 2020).  Further, Wheeler only provided a few pages of evidence in response to HHS's motion.  To the extent Wheeler's evidence contradicts HHS's statement of facts, the Court will consider those relevant facts contested.  The Court will consider the rest of HHS's statement of facts undisputed, so long as those facts are adequately supported by the record.  See Fed. R. Civ. P. 56(e); LCvR 7(h)(1); Arrington v. United States, 473 F.3d 329, 335 (D.C. Cir. 2006) (noting that rule "permits, but does not require," the district court to treat facts as conceded).

concerns, he nonetheless suggested that Wheeler "take advantage of the training." Def. Mot. Summ. J., Ex. 2 at 26–27. Wheeler responded that "I personally don't feel the class is necessary" and "prefer to wait on the explanation as to why these classes need to be take [sic]." Id. at 26.

By November, Wheeler still had not registered for the course despite being instructed to do so on several occasions, including during his mid-year review in which he was informed that his "appraisal percentage [was] rated at the lowest score." Id. at 26–41 (training recommendation emails); Id. at 91 (Gravette aff.). Gravette and Little met with Wheeler again to discuss the request. Id. at 42 (calendar invite); Id. at 91–92 (Gravette aff.). The tenor of the meeting is disputed. Wheeler asserts that his supervisors "verbally harassed" and intimidated him, yelling: "we are not going to send you an email with an explanation. That's not how we roll. I don't know who you think you are. We told you to sign the training forms." Id. at 55 (Wheeler aff.). According to Wheeler, he left the meeting and went into Brown's office to report the exchange, which he believed was harassment motivated by his gender. Id. at 55–57. Brown again recommended that Wheeler take the class. Id. at 57.

HHS disputes that characterization of events. It claims Wheeler called Gravette a liar and stormed out of the meeting. Id. at 80 (Little aff.), 91–92 (Gravette aff.). Gravette issued Wheeler a reprimand letter for his outburst during the meeting and for failing to complete the training after being instructed by his supervisors to do so on six occasions. Id. at 60–62 (reprimand letter).

B. Failure to Promote

The following month, Wheeler became eligible for promotion to the GS-12 level. Id. at 88 (Gravette aff.). Instead of a promotion, Wheeler received a notice stating that his "performance [was] deficient in all critical elements." Id. at 63–68 (performance deficiency

3

notice). The notice cataloged complaints about Wheeler's interactions with customers and coworkers and instances in which he was unprepared for meetings, failed to comply with his supervisor's instructions, or otherwise failed to meet standards of professionalism. Id. Gravette simultaneously issued Wheeler a memorandum advising him that he needed to improve his performance before he could be promoted. Id. at 69–71 (career ladder promotion mem.). This career memorandum noted that "promotions within career ladders are neither automatic nor mandatory" but are reserved for employees with "fully successful" or higher performance ratings. Id. at 69. It further explained that promoting Wheeler would "be setting [him] up for failure." Id. at 70. In support of that conclusion, the memorandum highlighted Wheeler's "poor standards of work," "inability to cope with a reasonable volume of work," "negative attitude toward work and poor interpersonal skills," "lack of respect for leadership, customers and colleagues," and "excessive absenteeism and tardiness. " Id. (cleaned up). In closing the memorandum, Gravette acknowledged that Wheeler brought strengths to the position, recommended that he develop his communication skills, and offered to work with him over the next three months to prepare him for a promotion. Id. Just four months later, Gravette and Little promoted Wheeler to GS-12. Def.'s Mot. Summ. J., Ex. 1 at 57:14-58:7 (Wheeler's dep.).

    C.  Procedural Background

About two weeks after receiving the deficiency notice and career memorandum, Wheeler contacted HHS's EEO office about his treatment. Def.'s Mot. Summ. J., Ex. 2 at 9 (EEO pre-complaint report). Wheeler followed with a formal complaint alleging that he was (1) subjected to harassment based on his gender when he was told to enroll in communications training and spoken to harshly during the November meeting with his supervisors and (2) discriminated against when he was issued the performance deficiency notice and not promoted. Def.'s Mot. Summ. J., Ex. 3 at 2–3 (final agency decision). The agency issued a final decision concluding

that Wheeler had not met his burden of establishing either discrimination or harassment. Id. at 16.

Wheeler then filed suit in Maryland state court. Def.'s SMF ¶ 40. HHS removed the case to the U.S. District Court for the District of Maryland, which proceeded to transfer the case here. Id. ¶ 41. Once here, this Court dismissed a retaliation claim from Wheeler's complaint because it was not administratively exhausted. Wheeler v. Becerra, No. 20-1287 (CRC), 2021 WL 3288079 (D.D.C. Aug. 2, 2021). What remains are Wheeler's claims that he was (1) subjected to harassment when his supervisors asked him to attend communication training and allegedly yelled at him for failing to do so, and (2) discriminated against when his supervisors issued him the performance notice and initially declined to promote him. The parties proceeded to discovery on those claims, and HHS now moves for summary judgment.

## II.   Legal Standards

Courts must grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the "absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1). In making that determination, courts must "view the facts and draw reasonable inferences 'in the light most favorable to the [non-moving] party . . . .'" Scott v. Harris, 550 U.S. 372, 378 (2007) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)). The non-movant may not, however, rely on "mere allegations" or conclusory statements to defeat a motion for summary judgment. Veitch v. England, 471 F.3d 124, 134 (D.C. Cir. 2006).

## III.   Analysis

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also makes it unlawful for an employer to "requir[e] people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

The "statutory text establishes two elements for an employment discrimination claim: (i) the plaintiff suffered an adverse employment action (ii) because of the employee's race, color, religion, sex, or national origin." Brady v. Office of Sergeant at Arms, 520 F.3d 490, 493 (D.C. Cir. 2008). Following the D.C. Circuit's recent en banc ruling in Chambers v. District of Columbia, the first element is satisfied by even "garden-variety" discrimination as to the terms, conditions, or privileges of employment. 35 F.4th 870, 874-75, 79 (D.C. Cir. 2022) (en banc). As to the second element, a plaintiff may defeat a motion for summary judgment with "either direct or circumstantial evidence" of "intentional discrimination." Dunaway v. Int'l Bd. of Teamsters, 310 F.3d 758, 763 (D.C. Cir. 2002) (internal quotation marks omitted). If the plaintiff relies upon the latter, the Court turns to the familiar three-part framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973): *first*, the plaintiff must establish a prima facie case of discrimination; *second*, the employer may rebut the plaintiff's prima facie case by providing a nondiscriminatory reason for the adverse employment decision; and, *third*, the Court must then assess whether a reasonable jury could infer from the plaintiff's evidence that the employer's proffered reason is merely pretext for discrimination. Green v. Johnson, 208 F. Supp. 3d 307, 310 (D.D.C. 2016), aff'd sub nom. Green v. Nielsen, No. 16-5295, 2018 WL 1391714 (D.C. Cir. Mar. 1, 2018); see also McDonnell Douglas, 411 U.S. at 802-05. When a Title VII defendant asserts a legitimate non-discriminatory justification for a decision, the district court must determine whether the employee produced sufficient evidence for a reasonable jury to find that the asserted non-discriminatory justification was not the actual justification. Brady, 520 F.3d at 494.

HHS asserts that Wheeler has failed to offer sufficient evidence to support his claims and to rebut HHS's nondiscriminatory justifications for each alleged violation of Title VII. Agreeing, the Court will grant summary judgment in HHS's favor.

A. Recommended Training and Verbal Rebuke

As an initial matter, it is unclear whether Wheeler is pursuing his training-related claims as discrete discrimination or under a hostile work environment theory. HHS characterizes them as a hostile work environment claim, and Wheeler did not dispute that characterization in his opposition. Def.'s Mot. Summ. J. at 7. Regardless of which theory is put forth, the Court reaches the same conclusion—no reasonable jury could find that HHS violated Title VII by instructing Wheeler to attend training or rebuking him for failing to do so.

Wheeler alleges that he was asked to take the training course and harassed by his supervisors during a follow-up meeting because of his sex. Compl. at 35. As support, Wheeler asserts, without more, that "I believe my sex was one (1) of the reasons that two female supervisors made a derogatory statement because I am a male employee[.] (They are females in a management role)." Def.'s Mot. Summ. J, Ex. 2 at 57 (Pl.'s aff.). That assertion cannot undermine the non-discriminatory justification offered by HHS for recommending Wheeler enroll in interpersonal communications training—Wheeler had been abrasive with coworkers and customers. Gravette explained in an affidavit submitted during the administrative EEO proceedings that she recommended the training so Wheeler could "enhance his communication skills" in response to complaints that he was "being rude." Id. at 90. Little elaborated in her affidavit that the training was recommended because "it had come to my attention that [Wheeler] was rude to customers, arrogant and talked down to people including fellow team members." Id. at 78. Little recounted that customers and coworkers had commented on his behavior and that "he would fling work documents," raise his voice, and otherwise act unprofessionally. Id.

7

Wheeler has not rebutted any of that evidence. To the contrary, the limited evidence provided by Wheeler in opposition to HHS's motion included an email from Senior Budget Analyst Charles McPhatter noting "more than one incident where individuals we serve were left maybe uncomfortable and frustrated after conversations with [Wheeler]." Pl.'s Opp'n, Ex. at 7. Taken together, no reasonable jury could review the evidence and determine that Wheeler was instructed to attend communication training because he is a man and his supervisors are women.

To the extent Wheeler claims that his supervisors created a hostile work environment by lecturing him about the training program, that theory falls flat as well. Even assuming Wheeler's version of the facts—his supervisors yelled at him for failing to register for the training and told him "that's not how we roll" in response to a request for a written justification—there is no evidence to support the existence of a hostile work environment. For purposes of Title VII, a hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris, 510 U.S. at 21 (citation omitted). That standard is demanding because Title VII is not intended to function as a "general civility code" policing "the ordinary tribulations of the workplace." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal quotations omitted). Thus, the "conduct must be extreme." Id.

The evidence here does not reveal extreme or severe conduct, or a sustained pattern of offensive behavior sufficient to alter the conditions of Wheeler's employment. See Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2002) ("Even a few isolated incidents of offensive conduct do not amount to actionable harassment."). Further, not a single piece of evidence, aside from Wheeler's own speculation, supports a finding that his supervisors' actions were fueled by animus due to his sex. The absence of such evidence is fatal to his claim. See, e.g., Nichols v.

Truscott, 424 F. Supp. 2d 124, 140 (D.D.C. 2006) (granting summary judgment on a hostile work environment claim because "plaintiff has failed to establish any relation between the alleged harassment and plaintiff's membership in a protected class").

Accordingly, the Court grants summary judgment for HHS as to Wheeler's harassment allegations, whether framed as a discrimination or hostile work environment claim.

B. Failure to Promote & Deficiency Notice

Wheeler also contends that HHS violated Title VII by refusing to promote him and issuing him a deficiency notice and career plan memorandum. Compl. at 35. Once again, HHS offers legitimate, non-discriminatory justifications for those actions and Wheeler has not produced evidence to contest the agency's explanations.

An HHS employee not meeting performance expectations is not eligible for a promotion. Def. SMF ¶ 17. And as both the deficiency notice and career plan memorandum catalogued, the agency felt that Wheeler's performance was "deficient in all critical elements." Def.'s Mot. Summ. J., Ex. 2 at 63-71. In particular, Wheeler's supervisors highlighted his "poor standards of work," "inability to cope with a reasonable volume of work," "negative attitude toward work and poor interpersonal skills," "lack of respect for leadership, customers and colleagues," and "excessive absenteeism and tardiness" as examples of his underperformance. Id. at 70 (cleaned up). The performance deficiency notice also lists specific examples of Wheeler's underperformance, including instances where Wheeler failed to follow proper procedure, was ill-prepared for a meeting, and received a customer complaint. Id. at 63–68 (deficiency notice).

Wheeler offers little to contest that evidence. In support of his abilities, Wheeler provides an excerpt of an affidavit from Senior Budget Analyst Charles McPhatter stating that "[Wheeler's] work performance was sufficient." Pl.'s Opp'n, Ex. at 2. But McPhatter added that Wheeler's performance was deficient "with respect to his interactions with ASFR

9

Stakeholders." Id. Asked to elaborate on this statement by an EEO investigator, McPhatter explained that "[t]here is more than one incident where individuals we serve were left maybe uncomfortable and frustrated after conversations with [Wheeler]." Id. at 8.

Wheeler also maintains that his performance could not have been deficient because there was no documented record of his deficiencies in the September 2018 review he received soon before the denial of his promotion. Id. at 4–5. Wheeler is correct that the performance review form requires a written narrative "if performance on any element is less than Achieved Expected Results" and that no narrative appears in his September review. Id. But that ignores the detailed deficiency notice and career plan memorandum that were issued in December when Wheeler was denied the promotion. Wheeler also acknowledged in a September 2018 email to Brown that his supervisors informed him that his "appraisal percentage [was] rated at the lowest score." Def.'s Mot. Summ. J., Ex. 2 at 26. Thus, Wheeler has not provided evidence to contest the legitimacy of the agency's critiques of his performance.

Even if Wheeler had cast doubt on the validity of his performance review, he offers no evidence to show that his gender was a factor in the promotion denial. In fact, Wheeler acknowledged in his deposition that he did not know why he was not promoted. Def.'s Mot. Summ. J., Ex. 1 at 62:9–11 ("I don't have the answer to it as to why management didn't promote me."). He does opine that "sex was a factor because I am a young intelligence [sic] male that is educated and knowledgeable of budget and performing financial analysis" and that his female supervisors were "threatened by my mind set [sic] and ability to do their work." Def.'s Mot. Summ. J., Ex. 2 at 53 (Pl.'s Aff.). But that is simply speculation, unsupported by any evidence that either Gravette or Little harbored gender bias. See Johnson v. Perez, 823 F.3d 701, 710 (D.C. Cir. 2016) ("Courts may grant summary judgment to a defendant where a plaintiff's evidence is vague or conclusory."). And even if Wheeler is correct that his supervisors were

somehow threatened by his abilities, their decision to issue him a deficiency notice and deny him a promotion on that basis alone would not run afoul of Title VII.  Lastly, any suggestion that sex was the motivation for those decisions is undermined by the fact that Gravette and Little were responsible for hiring Wheeler in the first place and then promoted him a mere fourth months after issuing the deficiency notice and career memorandum.  Def.'s SMF ¶¶ 3, 50.  Because no reasonable jury could find that Wheeler was issued a deficiency notice and temporarily denied promotion because of his sex, HHS is entitled to summary judgment on those claims as well.

## IV. Conclusion

For these reasons, the Court will grant Defendant's Motion for Summary Judgment.  A separate Order shall accompany this opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date:  December 29, 2022